UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DENNIS BRYAN HENDRICKSON,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>    Defendant. | Case No. 1:24-CV-383 JD |

## OPINION AND ORDER

Plaintiff Dennis Hendrickson applied for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging that he became disabled in January 2021. His claim was rejected, leading to a review by an Administrative Law Judge ("ALJ"), who concluded that Mr. Hendrickson was not disabled. The Appeals Council later denied his request for review, and Mr. Hendrickson now seeks judicial review in this Court. For the reasons below, the Court will affirm the Agency's decision.

### A. Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th

Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**B. Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

2

U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**C. The ALJ's Decision**

Mr. Hendrickson filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning in January 2021. His claim was denied initially and upon reconsideration, leading to a hearing before an ALJ on September 7, 2023.

As relevant to this appeal, at the hearing, Mr. Hendrickson testified, among other things, that he has trouble with his lower back and that it hurts to stand for a long period of time. (R. at 52–53). He said he works as a crossing guard, a job that he performs primarily standing, although he uses a lawn chair as well. (R. at 52.) He explained that he could stand for 10 minutes before needing to sit down. He said that he experiences pain from sitting if he does not get up and move about every thirty minutes. (R. at 54.)

On January 22, 2024, the ALJ issued a decision finding that Mr. Hendrickson was not disabled. (R. at 35.) In doing so, the ALJ employed the customary five-step analysis. At step two, the ALJ determined that Mr. Hendrickson suffered from the following severe impairments: "major depressive disorder, mild with mixed anxiety; mild neurocognitive disorder due to traumatic brain injury; lumbar degenerative disc disease; and obesity." (R. at 25.)

Between steps three and four, the ALJ determined Mr. Hendrickson's residual functional capacity ("RFC"),[1] finding that he can

> perform light work[2] . . . with the following limitations. The claimant can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. He can occasionally

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also

balance, stoop, kneel, crouch, and crawl. The claimant can understand, remember, and carry out simple instructions.

(R. at 28.)

The ALJ posed this RFC to the vocational expert ("VE") as part of a hypothetical question. The VE testified that there were jobs available in significant numbers in the national economy for such an individual: electrical assembly, housekeeper, inspector-hand packager. (R. at 64.) The ALJ accepted the VE's testimony, ultimately finding that Mr. Hendrickson was not disabled. According to the ALJ, while Mr. Hendrickson's alleged impairments could cause symptoms he is complaining of, their reported severity and impact are not fully supported by the medical and other evidence. (R. at 29.)

In considering the opinion of consultative examiner Dr. Emily Krach, the ALJ found it "generally persuasive." Dr. Krach opined that Mr. Hendrickson could stand or walk for at least 2 hours in an 8-hour workday and could lift or carry less than 10 pounds frequently and more than 10 pounds occasionally.

The ALJ found "persuasive" the state agency consultants' opinions that Mr. Hendrickson retained the capacity to perform at a light exertional level with the limitations she incorporated into the RFC.

**D. Discussion**

**(1)** *Medical Opinion Evidence*

In his appeal, Mr. Hendrickson argues that the ALJ erred by failing to incorporate all of Dr. Emily Krach's findings into the RFC assessment—specifically, her noted limitations in

---

do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

lifting/carrying and standing/walking—even though the ALJ found her opinion to be generally persuasive. Mr. Hendrickson further contends that the ALJ improperly credited the opinion of state agency medical consultant Dr. J.V. Corcoran over Dr. Krach's, even though Dr. Krach conducted an in-person physical exam and was therefore better equipped to assess his physical limitations. Apart from challenging the ALJ's evaluation of Dr. Krach's opinion, Mr. Hendrickson makes no other argument on appeal.

Under the regulations, an ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). But the ALJ must explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). When considering the persuasiveness of any medical opinion, an ALJ must consider the following factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. 20 C.F.R. §§ 404.1520(c), 416.920c(c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a). These are the factors the ALJ must explicitly discuss, even though the ALJ need only consider the other factors. 20 C.F.R. § 404.1520c(b). Failure to adequately discuss supportability and consistency requires remand. *See Tammy M. v. Saul*, 2021 WL 2451907, at *7–8 (N.D. Ind. June 16, 2021). The more consistent the medical opinion is "with the evidence from other medical sources and nonmedical sources in the claim,

the more persuasive" the medical opinion will be. 20 C.F.R. § 404.1520c(c)(2). For a provider's opinion to be supportable, it must be based on "objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "At the end of the day, once the administrative law judge properly considers these factors, we must allow that decision to stand so long as the administrative law judge minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (quotation marks and citation omitted).

In relation to Mr. Hendrickson's physical impairments, the ALJ considered the medical opinions of consultative examiner Dr. Krach and state agency medical consultants Dr. J.V. Corcoran and Dr. J. Sands. Dr. Krach conducted a consultative physical examination of Mr. Hendrickson in August 2022. On the basis of this examination, Dr. Krach opined that Mr. Hendrickson could: stand or walk for at least 2 hours during an 8-hour workday; lift or carry less than 10 pounds frequently; and lift or carry more than 10 pounds occasionally. "[A]lthough Dr. Krach did not provide greater specificity in this opinion," the ALJ found the opinion was "generally persuasive" because it was supported by Dr. Krach's own findings and observations of Mr. Hendrickson and was consistent with the overall evidence. (R. at 32.) Regarding supportability, the ALJ noted that Dr. Krach evaluated Mr. Hendrickson's neurological and musculoskeletal functioning and observed only a few mild deficits such as difficulty with tandem walk, inability to squat below 40 degrees, positive straight-leg raising, and slightly reduced lumbar forward flexion by 10 degrees. The ALJ also remarked that, despite Mr. Hendrickson

7

"presenting as deconditioned, he . . . demonstrated normal dexterity, neurological functioning, strength, reflexes, gait, range of motion, [and] ambulation/mobility. . . ." (R. at 31 (citing R. at 488, 491–493, 496).) The ALJ indicated that Mr. Hendrickson's hearing testimony that he can lift only about 5 pounds was inconsistent with his report to Dr. Krach that he could lift 20 pounds with each hand. (R. at 31 (citing R. at 487).) The ALJ also recognized that Mr. Hendrickson testified at the hearing that "he is able to walk for about two miles until he must stop to catch his breath." (R. at 29; *see also* R. at 56.)

> The ALJ also believed that the opinion was consistent with the overall evidence:
>
> the claimant has not seemed to engage in treatment for his back impairment and there is no evidence of physical or occupational therapy; emergency treatment for pain; or ongoing complaints of pain. Further, the claimant has not only worked as a crossing guard part-time, he performed a driving job as recently as November 2022 and even reported in September of that year that he had performed driving work for 7 days in a row. He has also endorsed the ability to care for himself, cook, clean, do laundry, care for his dogs, spend time outdoors, read, write, manage money, and mow the grass.

(R. at 32 (citations to the record omitted).)

As for the state agency medical consultants, the ALJ found persuasive their opinions that Mr. Hendrickson could perform light work. The ALJ noted that the opinions were supported by a discussion of the evidence and were reasonably consistent with the overall record. The ALJ again emphasized that the record reflected only mild deficits during the August 2022 consultative medical examination and that Mr. Hendrickson had not pursued treatment for his back impairment. Nor was there any evidence of physical or occupational therapy, emergency treatment for pain, or ongoing pain-related complaints.[3] The ALJ further noted Mr.

---

[3] While the Court typically approaches with caution an ALJ's finding that a claimant failed to seek treatment and looks for a plausible explanation for the lack of care, nothing in the record suggests that Mr. Hendrickson faced any impediment to obtaining medical treatment if he needed it. Moreover, he offers no such explanation in either his opening brief or his reply. Accordingly, the ALJ's conclusion that Mr. Hendrickson did not seek care because he had no "ongoing pain-related complaints" appears reasonable in this case.

8

Hendrickson's testimony regarding his ability to independently perform daily activities, including caring for his dogs and mowing the grass.

To begin with, Mr. Hendrickson urges the Court to apply heightened scrutiny to state agency doctors' opinions, citing *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014), for the proposition that an ALJ's dismissal of the agency's own consultative examiner's opinion warrants close review and a compelling explanation. (Pl. Rep. Br., DE 15 at 3.) But this argument overlooks regulatory changes implemented in 2017 that significantly alter how opinion evidence is weighed. *See Thielen v. King*, No. 23-CV-1378-BHL, 2025 WL 415638, at *3 (E.D. Wis. Feb. 6, 2025) (noting that *Beardsley* interpreted now-superseded 20 C.F.R. § 404.1527(c)(1), which applied only to claims filed before March 27, 2017). For claims filed after that date, as here, "the ALJ must not 'defer or give any specific evidentiary weight' to any medical sources." *Id*. (quoting 20 C.F.R. § 404.1520c(a)); *see also Townsend v. Kijakazi*, No. 22-CV-165, 2023 WL 3022548, at *3 (E.D. Wis. Apr. 20, 2023). But more importantly, *Beardsley* is inapplicable because the ALJ did not dismiss Dr. Krach's opinion; to the contrary, she found it "generally persuasive." After all, Dr. Krach's opinion and the opinions of the state agency consultants are consistent with each other. Mr. Hendrickson presents his argument as if Dr. Krach concluded that he can stand or walk for no longer than 2 hours in an 8-hour workday and lift or carry no more than 10 pounds occasionally, and as if the ALJ found her opinion categorically persuasive.[4] But that's not the case. First, Dr. Krach explicitly stated that she

---

[4] Under these parameters, either of these conditions would have limited Mr. Hendrickson to sedentary work. As defined by the Social Security Administration, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567. "Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting

9

believed Mr. Hendrickson "is able to stand/walk for *at least* 2 hrs in an 8hr day" (R. at 492 (emphasis added)), and the ALJ accepted this finding. Besides, the ALJ recognized that the opinion could have been more precise, stating that "[a]lthough Dr. Krach did not provide a greater specificity in this opinion, she provided sufficient support with findings and observations of the claimant." (R. at 32.) Mr. Hendrickson argues that Dr. Krach must have meant "at most 2 hours in an 8-hour day," but given the clarity of the statement, the Court cannot substitute its judgment—even if it agreed with Mr. Hendrickson—for that of the ALJ. *See Lopez ex rel. Lopez*, 336 F.3d at 539. Moreover, the ALJ explained why this opinion is supported by Dr. Krach's own examination and consistent with the record:

> Despite presenting as deconditioned, he also demonstrated normal dexterity, neurological functioning, strength, reflexes, gait, range of motion, ambulation/mobility, and sensation with only slight findings such as difficulty with tandem walk; inability to squat below 40 degrees; positive straight-leg raising; and slightly reduced lumbar forward flexion by 10 degrees. Additionally, the claimant has not seemed to engage in treatment for his back impairment and there is no evidence of physical or occupational therapy; emergency treatment for pain; or ongoing complaints of pain.

(R. at 31 (citation to Dr. Krach's examination form omitted).)

Furthermore, with respect to lifting and carrying, Dr. Krach's opinion is consistent with the exertional requirements of light work. "Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds." *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). Dr. Krach's opinion was consistent with this regulation as she found that Mr. Hendrickson could lift or carry 10 pounds *frequently* and more than 10 pounds occasionally. Moreover, in discussing Mr. Hendrickson's consultative evaluation, the ALJ explained that Mr. Hendrickson "endorsed the ability to lift 20 pounds with each arm,"

---

should generally total approximately 6 hours of an 8-hour workday." Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2, SSR 83-10 (S.S.A. 1983).

which the ALJ found to be "inconsistent with his hearing testimony and allegations of the ability to lift only about 5 pounds." [5] (R. at 31 (citing to Dr. Krach's Report, R. at 487).) Additionally, relying on the information in the report, the ALJ found that Mr. Hendrickson's "allegations of debilitating symptoms are inconsistent with these records and there is no basis to find that he has been more limited as set forth in the [RFC]." (R. at 31.) In short, the ALJ sufficiently explained the supportability and consistency factors in relation to Dr. Krach's opinion.

It is also clear that the ALJ considered Dr. Krach's lifting and carrying limitations together with the opinions of the state agency medical consultants, who believed that Mr. Hendrickson "retained the capacity to perform at a 'light' exertional level" subject to some physical and mental limitations and whose opinions she found "persuasive." (R. at 33.) The ALJ referred to the same reasons she provided in evaluating Dr. Krach's opinion as the basis for finding the state agency consultants' opinions both supportable and consistent.

Mr. Hendrickson also argues that the ALJ erred by relying on his daily activities and his part-time job as a crossing guard to find that he could perform work requiring light exertion. It is true that the ALJ acknowledged Mr. Hendrickson's own report that he is able to care for himself, cook, clean, do laundry, care for his dogs, spend time outdoors, read, write, manage money, and mow the grass. (R. at 32, citing R. at 326). However, the ALJ did not equate those activities, or his part-time crossing guard job, with the ability to engage in full-time employment. As the Seventh Circuit has explained, "[w]e have repeatedly cautioned that a person's ability to perform

---

[5] The disability examination form that Dr. Krach completed is somewhat confusing, as it does not clearly distinguish between the claimant's subjective reports and objective medical findings. For example, under the heading "Functional Capacity," Dr. Krach noted that Mr. Hendrickson can walk one block, stand for 20 minutes, climb five stairs, and lift 20 pounds. (R. at 487.) However, it is unclear whether this information reflects Mr. Hendrickson's self-reports, as the ALJ appears to have interpreted it, or Dr. Krach's findings based on her clinical assessment. Except for the lifting limitation, the ALJ did not address the other statements in her decision. Regardless of whether the 20-pound limitation comes from Mr. Hendrickson himself or from Dr. Krach's assessment, the ALJ was free to accept it and could use this information in determining Mr. Hendrickson's lifting and carrying abilities.

11

daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Still, "an ALJ is not forbidden from considering statements about a claimant's daily life. In fact, agency regulations instruct that, in an assessment of a claimant's symptoms, the evidence considered includes descriptions of daily-living activities." *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020) (citing 20 C.F.R. § 404.1529(a), (c)(3)). Here, the ALJ referenced Mr. Hendrickson's daily activities and part-time work as factors among many in determining that his reported limitations were not fully supported by the evidence. In doing so, the ALJ acted within her discretion and did not commit legal error.

In summary, the Court finds that the ALJ at least minimally articulated her reasons in finding Dr. Krach's opinion "generally persuasive" and ultimately determining that Mr. Hendrickson retained the RFC to perform light work.

### E. Conclusion

For these reasons, the Court AFFIRMS the Agency's decision. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: August 25, 2025

                                            /s/ JON E. DEGUILIO
                                            Judge
                                            United States District Court